UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDE MEITZENHEMIER,             )<br>                                                      )<br>              Petitioner,              )<br>                                                      )<br>        v.                                         )<br>                                                      )<br>V.M. ALMAGER,                           )<br>                                                      )<br>              Respondent.            )<br>_____) | 1:08-CV-01256 JMD HC<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGEMENT<br><br>ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Clause Meitzenhemier ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus under 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Centinela State Prison, pursuant to a judgement of the Kern County Superior Court. (Pet. at 2). Petitioner was convicted by a jury in December 2005, of possession of methamphetamine while armed with a loaded, operable firearm (Cal. Health & Safety Code § 11370.1(a)), possession of methamphetamine for sale (Cal. Health & Safety Code § 11378), felony possession of ammunition by a person prohibited from having ammunition (Cal. Penal Code §§ 12021 or 12021.1 and 12316), and possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)). (Lod. Doc. 3 at 2). The trial court further found that Petitioner had three prior felony convictions within the meaning California Penal Code sections 667(c)-(j) and 1170.12(a)-(e). (Id. at 2-3). Petitioner was sentenced to a term of twenty-five years to life. (Answer at 3).

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District. (Lod. Doc. ). The appellate court issued a reasoned opinion on February 22, 2007, rejecting Petitioner's claims. (*See* Lod. Doc. 3).

1    Subsequently, Petitioner filed a petition for review and a petition for writ of habeas corpus to
2 the California Supreme Court. (Lod. Docs. 8, 10). The California Supreme Court summarily denied
3 both petitions. (Lod. Docs. 9, 11).
4    On July 29, 2008, Petitioner filed the instant federal petition for writ of habeas corpus.
5    On February 26, 2009, Respondent filed a response to the petition.
6    On March 23, 2009. Petitioner filed a reply to the answer.

Consent to Magistrate Judge Jurisdiction

On September 2, 2008, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to have a magistrate judge conduct all further proceedings, including the entry of final judgment. (Court Doc. 10). Respondent consented to the jurisdiction of a magistrate judge on October 20, 2009. (Court Doc. 16). On October 28, 2009, the case was reassigned to the undersigned for all further proceedings. (Court Doc. 34).

**FACTUAL BACKGROUND**[1]

On September 2, 2005, a drug enforcement team composed of Kern County Sheriff's Deputies, Kern County Probation Officers, and Bakersfield Police served search warrants on two apartments in an apartment complex located in Bakersfield. The search warrants covered apartments one and nine.

Officers entered apartment nine, which was the residence of the apartment manager, Rhonda Tapp. Melissa Heydt was inside the apartment. She was searched and 0.20 grams of methamphetamine were found in her possession. Heydt told the arresting officers that it was about a quarter gram, that it was hers, and that she had purchased it for $20 from appellant in apartment one.

At trial, Heydt testified that she had known appellant for a year or less and that she had contact with him about four times. Heydt denied that she had purchased the methamphetamine from appellant. Heydt agreed with the deputy district attorney's characterization of appellant as a "pretty large man" and testified that she was not intimidated by appellant and had no reason to feel afraid of him. On cross-examination, she admitted that she may have given officers appellant's name because they threatened to take her child away from her.

At the time of her arrest, Heydt also told officers that Allen Cockren had rented

---

[1] These facts are derived from the California Court of Appeal's opinion issued on February 22, 2007. (*See* Lod. Doc. 3). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sanders v. Lamarque*, 357 F.3d 943, 948 (9th Cir. 2004). Here, Petitioner has not presented evidence that would permit the Court to set aside the presumption of correctness that has attached to the State court's factual findings.

apartment one and was there every day for a couple of hours. At trial, Heydt testified apartment one was rented to a woman named Michelle[2] FN1 and that she had seen Michelle only once, when Michelle filled out a rental application. Heydt also testified she had seen Allen Cockren go in or come out of apartment one a couple of times.

The group of officers who went to apartment one knocked on the door, loudly announced "Sheriff's Department" and "search warrant," and demanded entry. There was no answer from inside the apartment, although the officer who knocked heard a loud banging noise as if someone was leaving the room. The officer again knocked and demanded entry. After receiving no response, an officer used a ram to force the door open.

The officers entered the apartment. Some of the officers went through the living room, entered a hallway, and saw Allen Cockren. They ordered him to the ground and took him into custody. Deputy Sheriff Jared Kadel saw appellant lying on the floor in a bathroom that was off to the left of the hallway. Deputy Kadel placed appellant in handcuffs, searched him, and located a $302 roll of cash in his right front pocket.

The officers then searched the entire apartment and located evidence in the northeast bedroom, the southeast bedroom and the kitchen.

The door to the northeast bedroom was open. A couch and computer were located in the northeast bedroom. Deputy Kadel found a key ring with six keys on it in the middle of the bedroom's floor.

A closet in the northeast bedroom contained a bullet resistant vest and a gray safe, about 18 by 24 inches, that had a broken door. The gray safe contained three boxes of ammunition and some loose ammunition. The northeast bedroom also contained four cell phones, some loose ammunition in a coffee can, gun parts, a box of sandwich bags, and a desktop charger with two walkie-talkie radios in it.

The door to the southeast bedroom was locked. The officers forced the door open. Later, the officer learned that a key on the key ring found in the northeast bedroom opened the lock on the southeast bedroom.

In the closet of the southeast bedroom, the officers found two locked safes. One safe was black and silver; the other safe was blue. Deputy Kadel and another officer used the keys found in the northeast bedroom to open the two safes.

The black and silver Brinks safe contained a loaded Colt .22 semiautomatic handgun. An officer racked the slide of the weapon and it appeared to operate properly. The black and silver safe also contained a digital scale, methamphetamine, bundles of cash that totaled $5,006, some marijuana, and rolling papers.

The closet where the safes were located also contained additional methamphetamine. The methamphetamine from the safe and closet consisted of seven packets totaling approximately 29.6 grams, which is more than one ounce. The packets ranged in weight from 0.23 grams to 23.4 grams.

The closet also contained clothing that fit someone with a large frame. Deputy Sheriff Mark Warren testified that the clothing belonged to "someone who had [a] large pant size and shirt size." Because Cockren had a slender build, weighed about 140 pounds

---

[2] The lease agreement to apartment one was seized by the officers and it listed the tenant as Michelle Espericueta.

and was approximately five feet six inches tall, Deputy Warren concluded that the clothes were consistent with appellant's frame and inconsistent with Cockren's frame. Deputy Warren did not ask either man to try on the clothes.

The blue Century safe contained a nine-millimeter Norinco semiautomatic handgun with a loaded magazine and no round in the chamber. The officer who found that gun stated it appeared to be in working order. The blue safe also contained some ammunition.

The southeast bedroom contained an air mattress, a blanket, sheets, pillows, a television on the floor, and a chair. In addition, Officer Christina Abshire searched the southeast bedroom and found a box that contained a piece of notebook paper that appeared to be a pay and owe sheet. The box also contained a roll of change, other papers, a phone charger, and a phone battery.

Officer Abshire also searched the kitchen of apartment one. She found a black, long-barreled .22 Ruger handgun in the top right hand drawer directly next to the stove. She also found a glass methamphetamine smoking pipe with black burn marks and white residue inside it. The pipe was on the middle shelf of a cupboard above the stove on the right hand side. Another pipe was located on the counter directly below where the first pipe was found. Next to the pipe on the counter was a yellow notebook.

In a drawer to the left of the stove, Officer Abshire located white plastic grocery bags that had the corners torn off. The condition of the bags was relevant because small quantities of methamphetamine are packaged for sale by placing the methamphetamine in the corner of the bag, tearing the corner off, and twisting it to hold the drug.

Officer Abshire found a black digital gram scale on top of the refrigerator. She also found a propane torch that could be used to make methamphetamine smoking pipes. Appellant's $29 state tax refund check was found on the bottom shelf of the overhead cupboard to the right of the stove.[3] The address on the check was Cockren's address.

**Defense Case**
Appellant contends that the key ring found in the northeast bedroom was not his. The key ring contained two car keys, one of which was to a maroon Oldsmobile that belonged to Allen Cockren. Officers searched the car and found several items belonging to Debbie Cockren, Allen's mother.

Appellant testified in his own defense. He denied that (1) the drugs and guns found in apartment one belonged to him, (2) he had the right to sell or control any items in the residence and (3) he had any clothes in the apartment. There were no bills found in apartment one to show who rented the apartment or paid the utilities.

Appellant testified that he was at the apartment complex that day because he was trying to rent an apartment. When he first arrived, he went to apartment nine to meet with the apartment manager about renting an apartment. He entered apartment one while waiting to see the manager. He brought the tax refund check as proof of income and brought the money to put down on the apartment. Appellant placed the check and a beer down on the kitchen counter; he did not place the check in the cupboard. Appellant explained that Cockren's address was on the tax refund check because he

---

[3]This was one shelf below where the methamphetamine pipe with burn marks was found.

needed an address to use while he was in prison.

(Lod. Doc.3 , Opinion of the California Court of Appeal, Fifth Appellate District, at 3-7).

## DISCUSSION

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner is currently incarcerated in Centinela State Prison,[4] Petitioner's custody arose from a conviction in the Kern County Superior Court. (Pet. at 2). As Kern County falls within this judicial district, 28 U.S.C. § 84(b), the Court has concurrent jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a State court convicted and sentenced Petitioner if the State "contains two or more Federal judicial districts").

**II.    ADEPA Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[4] Centinela State Prison is located in Imperial County, California, which falls within the jurisdiction of the Southern District of California. *See* 28 U.S.C. § 84(d).

determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal

law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999). Furthermore, AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

The initial step in applying AEDPA's standards requires a federal habeas court to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, the Court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision in order to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). Here, the California Court of Appeal and the California Supreme Court were the only courts to have adjudicated Petitioner's first two claims. As the California Supreme Court summarily denied Petitioner's claims, the Court looks through those decisions to the last reasoned decision; namely, that of the California Court of Appeal. *See Ylst v. Nunnemaker*, 501 U.S. at 804.

### III.    Review of Petitioner's Claim

The instant petition for writ of habeas corpus contains six grounds for relief: (1) sufficiency of the evidence; (2) inadequate jury instructions; (3) ineffective assistance of counsel; (4) illegal search and seizure; (5) prosecutorial misconduct; and (6) miscarriage of justice.

### *A.     Ground One: Sufficiency of the Evidence*

As the basis for his first ground for relief, Petitioner challenges the sufficiency of the evidence pertaining to his conviction on possession of drugs and firearms.

In reviewing sufficiency of evidence claims, California courts expressly follow the standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See People v. Smith*, 37 Cal.4th 733, 738-739 (Cal. 2005); *see also People v. Catlin*, 26 Cal.4th 81, 139 (Cal. 2001). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson* was objectively unreasonable), *cert. denied*, *Allen v. Juan H.*, 546 U.S. 1137 (2006). Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is as follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption of correctness applies to State appellate determinations of fact as well as those of the State trial courts. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to State court determinations of legal questions or to mixed questions of law and fact, the State court's factual findings underlying those determinations are entitled to the same presumption. *Sumner v. Mata*, 455 U.S. 539, 597 (1981)

The California Court of Appeal expressly rejected Petitioner's sufficiency of the evidence claim, finding that viewing the evidence in a light most favorable to the prosecution would lead to a rational trier of fact to conclude that Petitioner used the southeast bedroom and had rights over the things located in that room, including the two locked safes containing the marijuana, firearms, and

methamphetamine. The State court based this finding on the large sized clothes found in the southeast bedroom, which permitted a rational juror to conclude they belonged to Petitioner. As the clothes were found in the southeast bedroom's closet, a rational juror could conclude that Petitioner inhabited the bedroom and thus had control over the other things in the closet. Furthermore, the police found a California tax refund check in Petitioner's name in one of the kitchen cupboards (RT, Vol. 1 at 229); thereby permitting the jury to infer Petitioner inhabited the premises and had access to the kitchen, where two methamphetamine smoking pipes and a handgun were found. Lastly, as noted by the appellate court, the jury heard from a witness, Heydt, who admitted she told police at the time of the arrest that Petitioner sold her methamphetamine. The Court finds such evidence to be an reasonable basis for the appellate court to conclude that there was evidence sufficient to convict Petitioner for possession of drugs and firearms. As the State court applied the correct standard and their application of *Jackson* was not objectively unreasonable, the Court finds Petitioner cannot obtain habeas corpus relief on this ground.

### B. Ground Two: Inadequate Jury Instruction

In Ground Two, Petitioner contends that the trial court should have *sua sponte* instructed the jury on the precise meaning of the term "control"[5] as used in the context of constructive possession, arguing that the term has a specialized meaning in the law and therefore required further clarification.

Generally, claims based on instructional error under state law are not cognizable on habeas corpus review. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)). Thus, to obtain federal collateral relief for errors in the jury charge, a petitioner must show that the error so infected the entire trial that the resulting conviction violates due process. *Estelle*, 502 U.S. at 72; *see Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973) in finding that a habeas court must not merely consider whether an "instruction is undesirable, erroneous, or even universally condemned" but must

---

[5] While Petitioner uses the phrase dominion and control in discussing the court's failure to clarify the term constructive possession, the Court notes that the word dominion does not appear in the jury instruction's definition of the constructive possession.

instead determine"'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process'"). A habeas petitioner challenging the omission of a jury instruction bears an "especially heavy" burden of showing prejudice as omissions are less likely to be prejudicial than an affirmative misstatement of law. *Henderson*, 431 U.S. at 155; *Clark v. Brown*, 450 F.3d 898, 905 (9th Cir. 2006) (stating that in order to obtain habeas relief, a petitioner "must show that the alleged instructional error had substantial and injurious effect or influence in determining the jury's verdict") (citations and internal quotation marks omitted); *see also Beardslee*, 358 F.3d at 578.  "A substantial and injurious effect means a reasonable probability that the jury would have arrived at a different verdict had the instruction been given.  To decide whether [Petitioner] was prejudiced, we consider: (1) the weight of evidence that contradicts the defense; and (2) whether the defense could have completely absolved the defendant of the charge." *Byrd*, 566 F.3d at 860 (quoting *Clark*, 450 F.3d at 916 and citing *Beardslee*, 358 F.3d at 578) (citation and internal quotation marks omitted). "Due process requires that jury instructions in criminal trials give effect to the prosecutor's burden of proving every element of the crime charged beyond a reasonable doubt. [Citation] 'Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.'" *Townsend v. Knowles*, 562 F.3d 1200, 1209 (9th Cir. 2009) (quoting *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (per curiam)). "The jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id*. (citation and internal quotation marks omitted). "If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Middleton*, 541 U.S. at 437.

    Here, the jury was told that "[t]here are two kinds of possession: actual possession and constructive possession... 'Constructive possession' does not require actual possession but does require that a person knowingly exercise control over or the right to control a thing, either directly or through another person or persons." (CT at 174, 176, 180, 184). Petitioner seemingly argues that the trial court should have *sua sponte* issued clarification of the term control as used to define constructive possession. Petitioner argued before the State court that without additional clarification, the jury could read the term constructive possession to encompass situations where the defendant has

knowledge of the item's presence and opportunity to access that item.

The State court found this argument unpersuasive, concluding that the term was commonly understood such that a *sua sponte* instruction was not required. (Lod. Doc. 3 at 10-12). Specifically, the Court of Appeal stated:

> We conclude that the phrase "knowingly exercise control over" would not be understood by the jury to include a situation where the person has knowledge of the presence of the item coupled with the opportunity to access that item...Consequently, under the ordinary and common sense meaning of the words used in the instruction, the jury would not have considered the ability to gain control as the equivalent of the knowing exercise of control over an item.
> Webster's Third New International Dictionary (1986) at page 795 defines the verb "exercise" to mean "1a: to bring into play: make effective in action ...: bring to bear: exert...." Thus, the jury was informed that constructive possession required some action by appellant-the knowing exertion of control or the right to control the items. In the hypothetical situation of a person walking into a store and observing the merchandise, that person does not have constructive possession of any of the merchandise simply by knowing of its existence and having access to it. Constructive possession does not occur until the person knowingly takes some action that brings an item into his or her control. In sum, the instructions given would not have misled the jury into thinking that the potential to gain possession was all that was required to find constructive possession.

(Id. at 11-12).

The Court does not find this conclusion to be an objectively unreasonable application of the law. Furthermore, Petitioner has not established that he was prejudiced by the trial court's omission for Petitioner has not shown that. The Court finds that it is not reasonably likely that the jury applied the term control in the manner advanced by Petitioner; thus, Petitioner's claim for relief is denied.

### C.     Ground Three: Ineffective Assistance of Counsel

In his third ground for relief, Petitioner contends that his trial counsel provided ineffective assistance by failing to challenge the validity of the search warrants, failing to file a motion to dismiss, and failing to obtain the statement of the confidential informant pursuant to *People v. Hobbs*, 7 Cal.4th 948, 961 (Cal. 1994). Petitioner claims that, "[c]learly effective counsel would apply these basic principles to an affirmative defense."[6]

\\\

---

[6] The Court notes that Petitioner did not present an affirmative defense at trial. At trial, Petitioner's defense was one of innocence. More importantly, Petitioner does not specify what affirmative defense counsel should have applies those basic principles to.

1    The California Supreme Court summarily denied Petitioner's ineffective assistance of counsel claim, citing to *In re Swain*, 34 Cal.2d 300, 304 (Cal. 1949) (denying petition on procedural requirement that petitioner allege with particularity facts upon which he can obtain relief) and *People v. Duvall*, 9 Cal.4th 464, 474 (Cal. 1995) (discussing procedural requirements for habeas corpus petition). As the holding in *Swain* and *Duvall* concern procedural grounds, the Court deems the State court to have not reached a merits adjudication in Petitioner's case. *See Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004) (holding that "a state has 'adjudicated' a petitioner's constitutional claim 'on the merits' for purposes of § 2254(d) when it has decided the petitioner's right to post conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review of the merits"). As there was no merits adjudication with regard to Petitioner's ineffective assistance of counsel claim, a federal habeas court reviews the claim *de novo*.[7] *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (noting that where State court does not reach a merits adjudication, the concerns of comity and federalism, that motivate the deference a federal habeas court affords a state court adjudication, do not attach).[8]

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995).

---

[7] The Court notes that the same standard of review applies to Grounds Four (Fourth Amendment), Five (prosecutorial misconduct), and Six (miscarriage of justice) as all four claims were raised in a petition for writ of habeas corpus to the California Supreme Court, which denied all claims with citation to *Swain* and *Duvall*.

[8] While the State court's denial of the claims on procedural grounds generally gives rise to a procedural bar that would foreclose this Court's review of Petitioner's claim, procedural default is an affirmative defense that Respondent was obligated to raise and preserve. *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002). As Respondent did not pled that these claims are barred by procedural default, the Court finds this defense has been waived. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005) (noting that affirmative defenses, such as procedural default, should be raised in the first responsive pleading in order to avoid waiver).

Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Secondly, the petitioner must show that counsel's errors were so egregious that the petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, the petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Id*.

Petitioner contends that counsel was deficient in failing to: (1) make a motion under *Hobbs* for a confidential informant's statement, (2) motion to dismiss the charges, and (3) motion to exclude evidence obtained in the search of the apartment. With regards to the first claimed error by trial counsel, Petitioner speculates that since the confidential informant was involved in drug transactions the informant statement's possesses exculpatory information. The Court notes that Petitioner's allegation is both speculative and conclusory as Petitioner has failed to provide any evidence of. *See Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (finding that conclusory suggestions fall short of establishing a valid claim of a constitutional violation). Petitioner has likewise failed to provide any evidence that had counsel made a motion under *Hobbs*, that the motion would have been granted or that the *in camera* review of informant's statement would have revealed any evidence resulting in a more favorable outcome for Petitioner. Thus, Petitioner cannot establish ineffective assistance of counsel on the grounds that counsel failed to make a motion under *Hobbs,* as Petitioner has produced no evidence for this Court to conclude that he was prejudiced by counsel's failure. Likewise, Petitioner has failed to establish prejudice in counsel's failure to move for a dismissal of the charges

or for excluding evidence obtain in the search of the apartment as Petitioner has not advanced any arguments or submitted any evidence that would allow the Court to conclude that counsel's motions would have been successful.[9]

### D.   Ground Four: Illegal Search and Seizure

In his fourth ground for relief, Petitioner contends that evidence seized in the apartment was illegally obtained by officers, who exceeded the scope of their search warrants. Petitioner argues that the evidence should be excluded as "fruit of the poisonous tree." The Court interprets this argument to be an allegation that Petitioner suffered a violation of his Fourth Amendment right against unreasonable search and seizure.[10]

A federal district court cannot grant habeas corpus relief on the ground that evidence was obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a "full and fair opportunity to litigate" the Fourth Amendment issue. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Woolery v. Arvan*, 8 F.3d 1325, 1326 (9th Cir. 1993); *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 n. 3 (9th Cir. 1980) (stating that a "fourth amendment claim is not cognizable as a basis for federal habeas relief, where the state has provided an opportunity for full and fair litigation of the claim"). The Supreme Court in *Stone* noted that the purpose behind the exclusionary rule is preventative–specifically to deter law enforcement from future unconstitutional conduct by removing an incentive to disregard the Fourth Amendment. *Stone*, 428 U.S. at 492. Conversely, excluding evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost. *See Stone*, 428 U.S. at 489-90; *Woolery*, 8 F.3d at 1327-28. The Supreme Court acknowledged in *Stone*, 428 U.S. at 493, that permitting petitioners to raise search and seizure claims in a writ of

---

[9] The Court's review of the record evidences that there was a search warrant that permitted the police to search apartment one. Regardless of the warrant, the statement of Ms. Heydt to the officers that Petitioner sold her methamphetamine and was at apartment one (RT, Vol. 1, at 112) would have given the police probable cause to search the apartment.

[10] Petitioner does not assert that the trial court should have excluded the evidence under California Penal Code § 1538.5, which permits a defendant to move for suppression of evidence obtained in an unreasonable search or seizure; such a claim is not a cognizable ground for relief in habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) in stating that, "federal habeas corpus relief does not life for errors of state law"); *see also Medley v. Runnels*, 506 F.3d 857, 863 (9th Cir. 2007)(citing to *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) and *Estelle*, 502 U.S. at 67-68, for proposition that "a federal court may not overturn a conviction simply because the state court misinterprets state law").

habeas corpus would not significantly deter Fourth Amendment violations.  Balancing the goal of deterrence and the substantial societal costs of excluding trustworthy evidence led the *Stone* Court to conclude against permitting petitioners to raise search and seizure claims where the State provided the petitioners an opportunity for full and fair litigation of their claims.  *Id*. at 493-494.  The Ninth Circuit has likewise noted this rationale in discussing the high court's holding in Stone, stating that:

> [I]n cases where a petitioner's Fourth Amendment claim has been adequately litigated in state court, enforcing the exclusionary rule through writs of habeas corpus would not further the deterrent and educative purposes of the rule to an extent sufficient to counter the negative effect such a policy would have on the interests of judicial efficiency, comity and federalism.

*Woolery*, 8 F.3d at 1326 (citing *Stone*, 428 U.S. at 493-494); *see also Withrow v. Williams*, 507 U.S. 680 (1993) (stating that *Stone*'s limitation on habeas relief rested on prudential concerns, namely "the costs of applying the exclusionary rule on collateral review outweighed any potential advantage to be gained by applying it there").  Thus, the only inquiry this Court can make is whether Petitioner had a fair opportunity to litigate his claim.  *See also Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code § 1538.5 provides opportunity to challenge evidence, dismissal under *Stone* was necessary).

While there is no indication that an objection on Fourth Amendment grounds was raised at trial, Petitioner does not allege and the record does not show that he was denied the opportunity to litigate this issue in State courts.  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) (holding that the relevant inquiry is "whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided").  Consequently, the Court cannot grant Petitioner's request for habeas relief and the claim is denied.

### E.   *Prosecutorial Misconduct*

Petitioner contends that the prosecutor committed misconduct by repeatedly referring to large sized clothing found in the bedroom.  Petitioner contends this is a misstatement of the evidence as no large sized clothing were seized by the officers nor were any admitted into evidence.

The standard of review for a claim of prosecutorial misconduct raised in a petition for writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637,

642 (1974)). "Thus, to succeed, [Petitioner] must demonstrate that it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Renderos v. Ryan*, 469 F.3d 788, 799 (9th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 643).

Here, the prosecutor made two statements in closing arguments that referred to large sized clothing. The first was "[t]he only clothes that were found in there were in the southeast bedroom where all that dope and scales and guns are found, only thing in there is some big ol' clothes for a big ol' guy like Mr. Meitzenheimer." (RT, Vol. 2 at 393). The second statement occurred during rebuttal where the prosecuted stated, "I've already thoroughly argued most of that evidence to you already about Miss Heydt's statement and the consistency of her statement with the physical evidence, the clothing in the closet that is consistent with Mr. Meitzenheimer and no one else that potentially is associated with that apartment, you know." (Id. at 414). While Petitioner is correct that no clothing was introduced into evidence, at least one officer testified to finding large sized clothing in the southeast bedroom of the apartment. (RT, Vol. 1 at 250). The same officer testified that the clothing in the closet was consistent with someone of Petitioner's frame. (Id. at 253). Consequently, the prosecutor's comments cannot constitute prosecutorial misconduct as they were reasonable inferences from the evidence and did not poison the trial with unfairness. *See Darden*, 477 U.S. at 181(where a prosecutor's argument "did not manipulate or misstate the evidence, nor did it implicate other specific rights of the accused" and "[m]uch of the objectionable content was invited by or was responsive to the opening summation of the defense" the prosecutor's comments did not deprive petitioner of a fair trial); *Duckett v. Godinez*, 67 F.3d 734, 742-43 (9th Cir.1995). The Court is also persuaded that Petitioner was not deprived of a fair trial as Petitioner's trial counsel remarked on the police's failure to seize the clothing, stating at closing that, "[t]hey did not seize that clothing. They did not bring it in here for you to see did it match his size or have him put it on, which they could force him to do if they wanted to. They did not seize it. It is not in evidence." (RT, Vol. 2 at 402). Thus, even if the prosecutor's statements misstated the evidence, the fact that the clothing was not in evidence was made clear to the jury and any misstatement would not have deprived Petitioner of a fair trial. Consequently, Petitioner's request for relief based on this claim is denied.

### F.  Miscarriage of Justice

In his last ground for relief, Petitioner contends that "[t]he State court failed to uphold the Federal and State Constitutions, Cal. Rules of Courts, and of Evidence, there is not one 'iota' of evidence connecting Petitioner to the offense. Yet the proceedings were allowed to be continued in violation of due process of the law."

The Court initially notes that a claim that a State court misapplied State law, such as the evidence code, the State constitution, or the rules of court, is not a cognizable ground for relief. *See Estelle*, 502 U.S. at 67. Petitioner's vague and conclusory allegation that the State court failed to uphold the Federal constitution also fails to establish a ground for relief as Petitioner has allege no facts nor advanced any contentions which would make such a contention plausible. *See Jones*, 66 F.3d at 205. Lastly, Petitioner's challenge to the strength of the evidence against him is unpersuasive for the reasons discussed *supra* in section (A) of this order. Accordingly, the Court denies the claim for relief.

## IV.  Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

\\\

\\\

1   In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

**Dated:     December 1, 2009**          **/s/ John M. Dixon**
                                  UNITED STATES MAGISTRATE JUDGE